IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NATALIE LUNDBERG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 3:23-cv-00042 |
| | ) |
| DELTA RESPONSE TEAM, LLC | ) |
| Serve: Registered Agent | ) |
| Susan Walton, President | ) |
| 209 Highland Avenue | ) |
| Appomattox, Virginia 24522 | ) |
| | ) |
| and | ) |
| | ) |
| THOMAS WALTON, | ) |
| Serve: 175 West Ridge Lane | ) |
| Appomattox, Virginia 24522 | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND JURY DEMAND**

Plaintiff Natalie Lundberg ("Lundberg"), by counsel, states the following as her Complaint against Delta Response Team, LLC ("DRT") and its Vice President, Thomas "Tom" Walton ("Walton") (collectively, "Defendants"):

**NATURE OF THE ACTION**

An individual's sexuality is simply not relevant to employment decisions. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1741 (2020). Natalie Lundberg should not have had her bisexuality weaponized against her by her boss and Vice President of DRT, Tom Walton. But that is exactly what happened in this case. Lundberg was employed by DRT as an EMS tech on an ambulance crew but was experiencing a hostile workplace. She therefore sought new employment at a different company and was offered a position by one potential new employer and advanced to a final interview for a second

1

potential new employer. Both new employers then contacted DRT and Walton for employment verification and a reference for Lundberg. DRT and Walton violated Lundberg's employment rights when Walton responded to both potential new employers, unprompted, that Lundberg was a bisexual, who made "questionable lifestyle choices," and was an "odd duck." As a result of Walton's unlawful statements, one potential employer withdrew Lundberg's offer of employment, and the other stopped Lundberg's interview process.

When Lundberg learned that Walton had destroyed her employment opportunities, she confronted him. He did not deny his statements and responded: "Well if they didn't hire you for that, would you still want to work with them?" Walton's destroying Lundberg's employment opportunities and callous defense of his actions created a hostile work environment for Lundberg and impacted her so significantly that she needed to take ADA- and FMLA-protected leave. When she requested leave, however, DRT retaliated against Lundberg by terminating her.

In this lawsuit, Lundberg brings federal claims against Defendants for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Virginia Human Rights Act ("VHRA"), the Family Medical Leave Act ("FMLA"), and the Virginia Wage Payment Act ("VWPA"). Lundberg also brings state law claims against Walton, and against DRT under a theory of vicarious liability, for tortious interference with Lundberg's business expectancies and intentional infliction of emotional distress.

### JURISDICTION AND VENUE

1. This Court has federal subject matter jurisdiction over the federal claims in this case pursuant to 28 U.S.C. § 1331.

2. This Court has pendent and supplemental jurisdiction over the state law claims in this case pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because all

defendants are residents of the State in which this District and Division is located and because defendants (a) are authorized to conduct business in this District and Division and have intentionally availed themselves of the laws and markets within this District and Division; (b) conduct substantial business in this District and Division; and (c) are subject to personal jurisdiction in this District and Division.

**PARTIES**

4. Lundberg is a Bisexual Female who is, and at all times relevant to this Complaint was, a resident of the Commonwealth of Virginia.

5. DRT is a limited liability company organized in Virginia. Its principal station is located at 175 W Ridge Ln, Appomattox, VA 24522. DRT has "stations in Charlottesville, Richmond, Lynchburg, Appomattox and Farmville… [and] provides both Non-Emergency and Emergency services through out Central Virginia and beyond." *See* https://www.deltaresponseteam.com/ (last accessed 8/4/23).

6. DRT is an "employer" under Title VII, the VHRA, the ADA, the FMLA, and the VWPA.

7. Walton is a natural person who is a permanent resident of the Commonwealth of Virginia and resides and is domiciled in this District. Walton is an "employer" under the Virginia Human Rights Act.

8. Upon information and belief, Walton was at all relevant times a Member, Manager or Director, Officer, and employee of DRT. Walton represented that he was DRT's Vice President. Walton's actions described herein were taken in performance of his employer's business and were in the course and scope of his employment at DRT.

**FACTUAL ALLEGATIONS**

*Lundberg Begins Her Employment*

9. Lundberg began her employment at DRT as an EMT in 2017.

3

10. At DRT, Lundberg staffed a 911 county-contracted ambulance under DRT's contract with Fluvanna County, Virginia

11. Lundberg's bisexuality had nothing to do with her job duties or ability to perform them.

*Lundberg's Goal is to Become a Paramedic*

12. When DRT hired Lundberg, or early on during her employment, Walton knew that Natalie's goal was to work for DRT to gain more experience until she was ready to work as an EMT for a larger agency.

13. Heterosexual individuals with a similar goal have gone on to work for Fire and EMS departments with Walton's assistance, or at least without his interference.

*Lundberg's Performance Well and Was Promoted*

14. Lundberg worked hard for DRT, including during the COVID-19 pandemic, and she had excellent evaluations regarding her work performance.

15. In August 2021, Lundberg interviewed for the position of Captain. DRT offered her the position, and she accepted.

*DRT and Walton Have a History of Demonstrating Discriminatory Animus*

16. DRT and Walton have a history of discriminatory animus towards non-heterosexual employees.

17. For example, in 2019, DRT and Walton learned that a lesbian couple worked for DRT.

18. Walton and DRT's President, Walton's wife Susan Walton ("Susan") (collectively, "the Waltons") expressed concern about the women in a relationship being staffed on a unit together at the same time.

19. The Waltons said they were afraid that having a lesbian couple working the same shift for DRT could negatively impact DRT's reputation.

20. Thereafter, the Waltons prevented the lesbian couple from working together on the same

4

shift.

21. On information and belief, heterosexual couples working for DRT have been permitted to work the same shifts. This includes, but is not limited to, a couple who began dating in 2020 while working together who eventually married and continued to staff a truck in 2021.

### *DRT and Walton Treat Lundberg Differently Because of Her Sexuality*

22. The Waltons and Lundberg's coworkers at DRT knew Lundberg's sexual orientation early in her employment because she is openly Bisexual and communicated that fact to DRT employees when asked. The Waltons were aware of these communications, and Lundberg also told them directly that she is Bisexual.

23. It became clear during Lundberg's employment at DRT that the Waltons, who own and control DRT, had a problem with Lundberg's sexual orientation and felt uncomfortable with it.

24. The Waltons communicated their feelings about sexual orientation in the workplace to DRT employees, which created an environment where other DRT employees felt free to harass Lundberg and did so.

25. In October, 2021 heterosexual coworker, Erica Wood ("Wood"), began harassing Lundberg and failing to follow protocol while on shift with Lundberg as Captain. Lundberg made a series of good faith complaints regarding Wood's harassment and insubordination to DRT HR and Walton.

26. On one occasion, Wood used her cell phone while driving an ambulance, a terminable offense. Lundberg had a recording of the incident, which she provided to DRT. Lundberg prepared a write-up for Wood and submitted it to Walton, who took no action on it.

27. DRT did not take steps to protect Lundberg or meaningfully follow up or remedy the harassment she experienced. In fact, DRT continued to schedule Lundberg to work with

        Wood even after long-documented harassment and insubordination.

28. On information and belief, when heterosexual individuals complained about interpersonal issues they experienced while on the job, DRT attempted to resolve those issues.

29. Additionally, DRT excluded Lundberg from benefits offered to heterosexual employees.

30. For example, DRT sponsored a "Biggest Loser" weight loss contest called "Fit for Duty" amongst its employees, with one female and one male winner each to receive a cash prize.

31. Lundberg had been on a weight-loss journey for a while at that point and knew that she could win. She entered the contest and lost more weight than the other female employees.

32. The male winner received a cash prize. However, DRT did not award Lundberg the cash prize she earned.

33. DRT stated that there were not enough female participants, though no rule about the number of participants existed until Lundberg won.

34. Furthermore, the Waltons gave heterosexual DRT employees who reached their 5-year anniversary of employment with DRT a congratulatory post on their social media, an internal email, and a monetary bonus or a trip in recognition for their years of service.

35. When Lundberg reached her 5 years of service in August 2022, she did not receive any recognition.

### *DRT and Walton Disseminate Adverse Job Reference Motivated by Discriminatory Animus*

36. Beginning in November, 2021, Lundberg began applying for positions at local Fire and EMS agencies.

37. Walton knew Lundberg was applying for other positions in real time.

### *Lundberg Loses Job Opportunities; Files FOIA*

38. On Thursday, November 16, 2021, Lundberg applied for a position with the city of Lynchburg Fire Department ("Lynchburg").

6

39. Lundberg heard back from Lynchburg the very next day that they would like her to come in on Monday, November 19, 2021, for an interview. That same day, Lynchburg informed Lundberg she would progress to the next interview steps, including references. Lundberg informed Walton he could get a call from Lynchburg for a professional reference.

40. On January 3, 2022, the investigator performing Lundberg's background check requested Walton's cell phone number, which Lundberg provided.

41. Lynchburg's investigator spoke with Walton, though Walton never told Lundberg he received a call.

42. On January 21, 2022, Lundberg was surprised when Lynchburg called her to say it would no longer proceed with her interview process. They provided only vague reasoning.

43. On January 31, 2022, Lundberg began the application process for a position with Bedford County Fire and Rescue ("Bedford"). Bedford followed up the very next day scheduling both an interview and a date for a skills assessment.

44. On February 11, 2022, Lundberg went through an interview, written test, and Fire and EMS skills drills as part of the Bedford interview process.

45. On February 16, 2022, Department Chief Janet Blankenship called Lundberg to extend a conditional offer of employment with Bedford. Lundberg accepted via email.

46. On February 18, 2022, Lundberg received an agency affiliation request from Bedford through the Virginia Department of Health Office of Emergency Medical Services ("OEMS").

47. On February 23, 2022, Bedford's background check investigator insisted Lundberg share Walton's cell phone number with him.

48. On February 25, 2022, Walton spoke with Bedford and then followed up with an inappropriate text to Lundberg: "Don't worry, I didn't tell them about your heroin

7

problem." Lundberg has never possessed or used heroin.

49. Bedford was scheduled to review Lundberg's background check information on March 4, 2022.

50. On March 7, 2022, Lundberg was shocked when Bedford informed her by email that it was rescinding its conditional offer of employment. Bedford gave only vague reasons for its decision.

51. Confused, Lundberg filed Freedom of Information Act ("FOIA") requests with Lynchburg and Bedford for records connected to her application and interview processes.

**Walton Disclosed Lundberg's Sexual Orientation to Potential Employers**

52. Lundberg discovered through the FOIA responses that when Walton was contacted for a reference by both Lynchburg and Bedford, he disclosed, unprompted, that Lundberg is openly Bisexual. Additionally, Walton questioned Lundberg's "lifestyle choices" and called her an "odd duck."

53. Walton did not recommend Lundberg as an employee to Lynchburg or Bedford.

54. Walton's comments and lack of recommendation violate DRT's own Employment Guide, which states in pertinent part under its "Employee Personnel Files and References" section that "Delta Response Team will provide only the former and present employee's dates of employment and position(s) held with the company. Compensation information may also be verified if written authorization is provided by the employee."

55. On or about March 10, 2022, Lundberg contacted HR about Walton's conduct. HR confirmed to Lundberg that any negative reviews given based on sexual orientation is inappropriate.

56. When Lundberg complained to Walton about the inappropriateness of his disclosing her sexual orientation on March 10, 2022, Walton did not deny he made the comments.

8

57. Walton flippantly responded to Lundberg words to the effect of: "Well if they didn't hire you for that, would you still want to work with them?"

58. On April 4, 2022, Lundberg and Walton spoke again about the comments he made to Bedford and Lynchburg. Walton stated in that conversation that if he had known that Lundberg's employment opportunities would not have continued because of his statements, he "never would have said it." Lundberg reiterated that it was entirely inappropriate to use someone's sexuality against them in a work-related manner. Walton *agreed it was uncalled for*. Nonetheless, Walton did not seem to have remorse for his statements, nor did he plan to help remedy the problem he created.

59. As a result of the conversation, Lundberg resigned as Captain and requested she be assigned to a part-time position in transport somewhere other than her current location of Fluvanna County, Virginia.

### *DRT Retaliates Against Lundberg*

60. After that conversation, DRT retaliated against Lundberg by treating her differently than it customarily treats its heterosexual employees.

61. DRT and Walton began denying Lundberg part-time work hours, denying her the use of her PTO leave, and denying her the PTO payout Walton suggested as what he called "Olive Branch." Walton emailed Lundberg that she would be paid out 8 hours of PTO after working *one* shift a month after she resigned as Captain. At this point she had 56 hours of PTO leave.

62. DRT then penalized Lundberg and threatened termination when she did not work *two* shifts per month, but heterosexual employees and/or employees who did not complain about discriminatory comments only had to work one shift per month to remain employed as a part-time.

9

63. In June 2022, Lundberg failed to work a shift only because she contracted COVID-19 when she was scheduled to work. Lundberg followed policy by timely informing DRT of her positive test and submitting a copy of her positive PCR result to DRT. DRT did not respond to Lundberg, nor did allow Lundberg to use PTO for this leave.

64. Heterosexual employees and/or employees who did not complain about discriminatory comments did not receive threats of discipline or termination after contracting COVID-19 or other medical ailments preventing them from working their scheduled shifts. Heterosexual part-time employees have also been permitted to use their PTO for time off to recover from COVID-19. Additionally, heterosexual employees without available PTO leave who contracted COVID-19 were permitted to take paid leave notwithstanding their lack of PTO.

*Lundberg Suffers Depression and Anxiety About Returning to Work*

65. Lundberg expressed to DRT's HR manager how distressed she had become from Walton's comments and actions, as well as the retaliation she was suffering.

66. On September 29, 2022, Lundberg requested a leave of absence to allow her to seek therapy and mentally recover from what had happened.

67. Lundberg expressly stated that she wished to remain employed by DRT and planned to return to work when she was able.

*DRT Failed to Send Lundberg FMLA Eligibility Notices or Accommodate Her Request*

68. After Lundberg explicitly requested time off to recover from a mental health crisis resulting from Walton's actions, DRT never sent Lundberg FMLA eligibility notices.

69. Lundberg sent an email to DRT on September 29, 2022 stating the following:

    *Good evening, Sheika,*

    *Thank you for your email. I would like very much to continue my part-time work for DRT.*

> *I have been unable to work shifts in recent months due to my COVID diagnosis and unfair treatment by DRT. The emotional stress resulting from DRT's actions has put continued stress on me and made it difficult for me to work.*
>
> *I caught Covid a few days before I was scheduled to work on June 24, 2022. I was proactive and took a test when I began to feel unwell. When I sent in sent proof of my positive diagnostic PCR testing, I did not receive any response from DRT, even though others who have been diagnosed with COVID have received follow-up. I felt a huge lack of concern for my physical and emotional wellbeing. A week later, after I emailed a second time, Tom Walton replied only to decline paying me for 12 hours. The whole episode was disheartening and depressing.*
>
> *Additionally, my 5-year anniversary (August 27, 2022) was never acknowledged by DRT, even though others (who are not bi-sexual) have received accolades, bonuses, or trips. This was another emotional blow, and it made me feel unappreciated.*
>
> *I feel very upset and very much cast aside. I believe I am being retaliated against for complaining about discrimination because of my sexual orientation or that I am still being discriminated against because of my sexual orientation. While I am working with my therapist and hope to be able to input availability soon, I am experiencing depression and anxiety because of DRT's actions towards me. I request an accommodation of time off until such time as I feel emotionally secure enough to return.*
>
> *Feel free to email me if you need to check in again.*
>
> *Sincerely,*
> *Natalie*

70. On information and belief, around that time DRT received a notification from the EEOC that Lundberg filed a Charge of Discrimination.

### *DRT Quietly Fires Lundberg, Thereby Constructively Discharging Her*

71. Though DRT did not schedule Lundberg to work from then on, it began the process of quietly firing her instead of protecting her job, in retaliation for Lundberg's engaging in protected activity.

72. On October 4, 2022, DRT HR emailed Lundberg and requested its property (uniforms, etc.) back from Lundberg.

73. On October 24, 2022, Lundberg's Principal 401k plan wrote a letter informing her that as a "former" employee of DRT, she would no longer receive retirement contributions from

74. DRT.

74. At no time did DRT ever inform Lundberg of her termination, and in fact Lundberg has continued to accrue vacation leave time in DRT's system.

75. However, if there was any dispute as to whether Lundberg remained an employee of DRT, May 8, 2023, the Virginia Department of Health, Office of Emergency Medical Services, notified Lundberg that DRT removed her agency affiliation from their list of affiliated employees.

### *Lundberg Files EEOC/ OCR Charge of Discrimination*

76. On June 2, 2022, Lundberg concurrently filed a Charge of Discrimination (Charge Number 438-2022-00873) with the EEOC and the Virginia Office of Civil Rights ("OCR") alleging sex discrimination and retaliation.

77. The EEOC issued a Notice of Right to Sue at Lundberg's request on May 8, 2023.

78. The OCR's Notice of Right to Sue is forthcoming. Counsel has requested this Notice on multiple occasions.

## COUNT I
## DISCRIMINATION ON THE BASIS OF SEX
## TITLE VII, 42 U.S.C. § 2000E-2(A)
## (AGAINST DRT)

79. Plaintiff incorporates by reference and realleges each allegation set forth above.

80. Lundberg came into a workplace permissive of discrimination on the basis of sex, including sexuality.

81. Lundberg was disparately treated by Walton and others at DRT on the basis of sex.

82. The discriminatory statements and conduct Lundberg endured were unwelcome, sufficiently severe or pervasive, detrimentally affected Lundberg, were viewed as subjectively hostile and abusive by Lundberg and would be viewed as objectively hostile and abusive to a reasonable person.

83. DRT had actual or constructive knowledge of the discrimination by Walton.

84. Walton and DRT failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Lundberg.

85. As a result of Walton's statements and his ignoring Lundberg's pleas to help her with the harassment, Lundberg was discharged or constructively discharged.

86. Walton and DRT discriminated against Lundberg on the basis of sex in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

87. Walton and DRT's discrimination on the basis of sex caused Lundberg damages.

## COUNT II
### RETALIATION
### TITLE VII, 42 U.S.C. § 2000e-3(a)
### (AGAINST DRT)

88. Plaintiff incorporates by reference and realleges each allegation set forth above.

89. Lundberg engaged in protected activity when she complained to Walton about his discriminatory statements on the basis of her sexuality.

90. After Lundberg complained, Walton denied Lundberg the use of and payout of her PTO, limited her work hours, and enforced rules against her that he did not enforce against heterosexual employees, such as working 2 shifts per month to remain employed.

91. Lundberg engaged in protected activity when she filed an EEOC Charge of Discrimination against DRT on June 2, 2022.

92. After DRT learned of Lundberg's Charge, it began the process of terminating her.

93. When Lundberg expressed that she had a mental health condition requiring her to take a leave of absence, DRT denied Lundberg ADA-accommodations and FMLA notices it would have given to an employee who had not made such a Charge.

94. There was a causal connection between Lundberg's complaints and the materially adverse actions taken by DRT of actually or constructively discharging Lundberg.

95. The retaliation endured by Lundberg would dissuade a reasonable employee from making complaints of discrimination and harassment against Walton and DRT.

96. DRT retaliated against Lundberg for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

97. Walton and DRT's retaliation caused Lundberg damages.

**COUNT III**
**INTERFERENCE**
**FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2615**
**(AGAINST DRT)**

98. Plaintiff incorporates by reference and realleges each allegation set forth above.

99. In fall of 2022, Lundberg communicated to DRT her need to take a leave of absence to work on her mental health crisis caused by Walton's use of her sexuality in a professional reference.

100. At no time did DRT offer Lundberg a FMLA Notice of Eligibility, a Rights and Responsibilities Notice, or a Designation Notice ("FMLA Notices") based on Lundberg's representing that she needed time off for a mental health condition for which she was seeking therapy.

101. Instead, DRT asked for its property, including uniforms, back from Lundberg, and took the other actions described above to effectuate her termination.

102. Failure to offer Lundberg FMLA Notices constitutes DRT interference with Lundberg's FMLA rights under 29 U.S.C. § 2615.

103. Lundberg suffered damages as a result of DRT's FMLA violation because she was discharged during the time her job should have been protected.

## COUNT IV
### DISCRIMINATION ON THE BASIS OF SEX
### VIRGINIA HUMAN RIGHTS ACT, VA. CODE § 2.2-3900
### (AGAINST DRT AND WALTON)

104. Plaintiff incorporates by reference and realleges each allegation set forth above.

105. For the reasons alleged above, Walton and DRT discriminated against Lundberg on the basis of sex, in violation of The Virginia Human Rights Act, Va. Code §§ 2.2-3900-03, *et seq*.

106. Walton and DRT's discrimination on the bases of sex caused Lundberg damages.

## COUNT V
### RETALIATION
### VIRGINIA HUMAN RIGHTS ACT, VA. CODE § 2.2-3900
### (AGAINST DRT AND WALTON)

107. Plaintiff incorporates by reference and realleges each allegation set forth above.

108. For the reasons alleged above, Walton and DRT retaliated against Lundberg for engaging in protected activity, in violation of The Virginia Human Rights Act, Va. Code §§ 2.2-3900-03, *et seq*.

109. Walton and DRT's retaliation caused Lundberg damages.

## COUNT VI
### VIRGINIA WAGE PAYMENT ACT
### (AGAINST DRT)

110. Plaintiff incorporates by reference and realleges each allegation set forth above.

111. DRT, through Walton, agreed to compensate Lundberg for her remaining PTO hours when she resigned as Captain and began working part-time.

112. DRT only compensated Lundberg for eight (8) of her PTO hours when she went part-time.

113. DRT owed Lundberg timely compensation for PTO hours for her COVID-19 sick leave.

114. When Lundberg contracted COVID-19 and had to miss work, DRT classified this leave as unpaid.

115. The 8 hours of PTO payout DRT paid Lundberg was not for Lundberg's COVID-19 sick leave.

116. DRT violated the Virginia Wage Payment Act when it failed to timely compensate Lundberg for all of her PTO payout and sick leave PTO hours.

117. DRT's violation of the Virginia Wage Payment Act caused Lundberg damages.

## COUNT VII
### TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY
### (AGAINST DRT AND WALTON)

118. Plaintiff incorporates by reference and realleges each allegation set forth above.

119. Lundberg had a valid business expectancy when she received an offer of employment from Bedford County Fire and EMS and when she was in a final interview with Lynchburg County Fire and EMS.

120. Walton knew about Lundberg's business expectancy.

121. Walton intentionally interfered with the business expectancy by causing a breach or termination of the relationship or expectancy between Lundberg and Bedford and Lundberg and Lynchburg by:

   (a) Using the improper means of violating DRT policy regarding information to be relayed in professional references,

   (b) telling persons involved in evaluating Lundberg for employment at Bedford and Lynchburg about Lundberg's sexuality during a professional reference, and

   (c) refusing to recommend Lundberg for employment at Bedford and Lynchburg based on her sexuality.

122. Walton's tortious interference in Lundberg's business expectancy with Bedford and Lynchburg caused Lundberg damages.

123. DRT is vicariously liable for Walton's actions. Walton's actions described herein were

taken in performance of DRT's business and were in the course and scope of his employment at DRT.

### COUNT VIII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DRT AND WALTON)

124. Plaintiff incorporates by reference and realleges each allegation set forth above.

125. Walton's statements to Lynchburg and Bedford about Lundberg were intentional.

126. Weaponizing Lundberg's sexuality against her was outrageous and intolerable behavior in that it offends generally accepted standards of decency and morality.

127. There is a causal connection between Walton's statements and Lundberg suffering emotional distress.

128. Lundberg's emotional distress as a result of Walton's statements has been severe.

129. Walton's actions in making statements to Lundberg's potential employers about her sexuality and then retaliating against her after she complained about the statements constitute intentional infliction of emotional distress.

130. DRT is vicariously liable for Walton's actions. Walton's actions described herein were taken in performance of DRT's business and were in the course and scope of his employment at DRT.

### PRAYER FOR RELIEF

WHEREFORE, Lundberg respectfully requests that this Court enter judgment in her favor against Defendants and order the following relief as allowed by law: including compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life; back pay and benefits; front pay and benefits; punitive damages; liquidated damages; treble damages; attorneys' fees and costs of this action as permitted by law; pre-

judgment and post-judgment interest at the highest lawful rate; and such further relief as this Court deems just and proper. Lundberg is entitled to damages in the amount of $1,000,000.

### JURY TRIAL DEMAND

Lundberg requests a trial by jury on all triable issues.

Respectfully submitted this 4th day of August, 2023.

/s/ *Sarah Robb*

Sarah Flynn Robb, Esq. (VSB No. 76734)
Sarah Robb Law
919 East Main Street, Suite 1000
Richmond, Virginia 23227
Telephone: (804) 482-1536
Facsimile: (804) 988-5464
sarah@sarahrobblaw.com
*Attorney for Plaintiff Natalie Lundberg*