IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

NATALIE LUNDBERG,

    Plaintiff,

v.                            Case No. 3:23-cv-00042

DELTA RESPONSE TEAM, LLC AND
THOMAS WALTON,

    Defendants.

## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.      INTRODUCTION

Faced with a properly supported motion for summary judgment demonstrating that Delta Response Team ("DRT") and Thomas Walton ("Walton") (collectively, "Defendants") are entitled to judgment as a matter of law, Natalie Lundberg ("Lundberg") resorts to recasting her claims, ignoring facts and Defendants' well-reasoned arguments, relying on colorful and bombastic rhetoric, and red-herrings—all in an attempt to conjure up a question of fact. Lundberg's efforts fall well short of defeating summary judgment.

Gone is Lundberg's claim that she was harassed and disparately treated because of her sexual orientation while employed at DRT. Instead, Lundberg now claims that she was "slut-shamed," judged because of her sexual partners, and had her "gender non-conformity" used against her. Lundberg cannot alter her claim at this late stage. The evidence reveals that Lundberg did not suffer an adverse employment action and was not discriminated or retaliated against because of her sex or sexual orientation. Nor was she qualified for leave under the Family and Medical Leave Act ("FMLA") or prejudiced by the failure to receive FMLA Notices.

And her failure to obtain employment with the City of Lynchburg and Bedford County was not the result of DRT or Walton's actions.

Simply put, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

## II.     THERE ARE NO GEUINE ISSUES OF MATERIAL FACT

Defendants' Brief in Support of Motion for Summary Judgment contained 33 paragraphs in a Statement of Material Undisputed Facts ("SOF").  (ECF Doc. 53, at 2-7.)  Lundberg made no effort to respond to those facts.  (*See generally* ECF Doc. 57, at 4-10.)  Rule 56(c) of the Federal Rules of Civil Procedure requires "a party asserting that a fact . . . is genuinely disputed" to "cit[e] to particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence . . . of a genuine dispute . . . ."  Fed. R. Civ. P. 56(c)(1).

> If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  Because Lundberg did not address Defendants' assertions of fact as required by Rule 56(c), the Court may consider Defendants' SOF undisputed.  *See id.*; *Gowen v. Winfield*, No. 7:20CV00247, 2022 WL 822172, at *3 (W.D. Va. Mar. 18, 2022).  *See also Tharrington v. Va.*, No. 7:17-cv-00090, 2019 WL 2583521, at *1 n.3 (W.D. Va. June 24, 2019) (holding that any fact raised by the defendant but not addressed by the plaintiff would be treated as undisputed for purposes of the motion for summary judgment); *Foster v. Go Wireless, Inc.*, No. 5:15-cv-00016, 2017 WL 972158, at *1 n.1 (W.D. Va. Mar. 10, 2017) (holding that facts not addressed in opposition to summary judgment were undisputed for purposes of the motion).

Instead of addressing Defendants' SOF, Lundberg provides six pages of "disputes of material fact" that she contends preclude summary judgment. (ECF Doc. 57, at 4-10.) Lundberg's arguments are red herrings, as she addresses facts that are not material and which were not relied upon in Defendants' Motion for Summary Judgment.

"The mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A fact is material when proof of its existence or nonexistence would affect the outcome of the case, and an issue is genuine if a reasonable jury might return a verdict in favor of the nonmoving party on the basis of such issue." *Northwestern Mut. Life Ins. Co. v. Atl. Research Corp.*, 847 F. Supp. 389, 394 (E.D. Va. 1994) (citing *Anderson*, 477 U.S. at 248). **"The disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict."** *Thompson Everett, Inc. v. National Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (emphasis added). "[T]here is no issue for trial unless **there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party**." *Anderson*, 477 U.S. at 249 (emphasis added).

Lundberg argues that there is a genuine issue of fact as to whether Defendants knew that she was bisexual. (ECF Doc. 57, at 4-5.) Yet, this fact is not material. Defendants' Motion for Summary Judgment did not rely upon evidence that Defendants were unaware that Lundberg was bisexual. Instead, even assuming that Defendants knew Lundberg was bisexual, Defendants maintained they are still entitled to judgment as a matter of law. Therefore, there is no material fact in dispute.

Lundberg also argues that there is a genuine issue of fact as to whether Walton brought up her lifestyle during the background investigations for the City of Lynchburg and Bedford County or whether he responded to questions from the investigators.  (ECF Doc. 57, at 5.)  In an attempt to create a factual dispute, Lundberg attaches declarations from the investigators stating that their account of Walton's statements in their reports is accurate and that they did not ask Walton about Lundberg's sexuality.  (*Id.* (citing ECF Doc. 57-6, ECF Doc. 57-7).)  Again, while there may be a genuine issue, this is not a material fact.  Defendants' Motion for Summary Judgment did not rely upon Walton's testimony that the investigators raised Lundberg's lifestyle during the interview and that he only responded to their questions.  Instead, the Motion assumes that what the investigators included in their reports is what Walton said and, even with that assumption, Defendants are entitled to judgment as a matter of law.  Therefore, there is no material fact in dispute.

Lundberg attempts, through speculation, to create a fact dispute regarding the reasons that the City of Lynchburg did not move forward with her as a candidate for employment and Bedford County rescinded her conditional offer of employment.  (ECF Doc. 57, at 5-8.)  Faced with declarations from the decision makers themselves—Deputy Chief Jonathan Wright and Chief Janet Blankenship—stating why they made their decisions, Lundberg argues that there are "numerous pieces of circumstantial evidence" that would enable a jury to determine that "Lynchburg's and Bedford's decision not to hire [her] was caused by, in whole or in part, the negative statements Walton made to the investigators."  (ECF Doc. 57, at 5-6.)  She then cites Walton's testimony regarding the need for employees post-COVID, Walton and DRT's "weight" in the EMS community, that her "employment paths" were positive before the reference, that Walton would have perceived a reference like this to be negative or disappointing if given about

him, and that the City of Lynchburg and Bedford County initial review panels recommended Lundberg for employment. (*Id.* at 6-8.)

Lundberg's speculative circumstantial evidence does not create a genuine dispute in the face of affirmative testimony from those who made the decision regarding whether to hire Lundberg. "[W]ithout evidence of an affiant's lack of credibility, an assertion that an affiant has lied is insufficient." *Thomas v. Meyer*, No. 1:21-cv-1428, 2023 WL 6226126, at *10 (E.D. Va. Sept. 21, 2023), *aff'd as modified*, No. 23-7007, 2024 WL 2815168 (4th Cir. June 3, 2024). A plaintiff cannot base her opposition to summary judgment "entirely on the hope that a fact finder will disbelieve persons who have submitted affidavits." *Id.* (citing *Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F. Supp. 1204, 1213 (E.D.N.Y. 1981), *aff'd* 697 F.2d 301 (2d Cir. 1982)). "Put another way, it is axiomatic that a 'party may not defeat a properly supported motion for summary judgment merely by raising generalized questions as to the credibility of the movant's affiants.'" *Id.* (quoting *Robinson v. Cheney*, 876 F.2d 152, 162 (D.C. Cir. 1989)). It is the perception of the decision maker that matters, *Croft v. City of Roanoke*, 862 F. Supp. 2d 487, 497 (W.D. Va. 2012), *aff'd* 506 F. App'x 218 (4th Cir. 2013), and Lundberg cannot contradict their sworn testimony.

Lundberg further attempts to create a fact dispute regarding her protected activity by accusing Defendants of disputing whether she made a report of discrimination constituting protected activity. (ECF Doc. 57, at 8-9.) Defendants have made no such contention. (*See* ECF Doc. 53, at 17-19.) Instead, Defendants relied upon Lundberg's deposition testimony that the complaints constituting protected activity upon which she was relying to support her retaliation claim were her reports to the Virginia Department of Health Office of EMS ("OEMS") in April 2022, and her Charge of Discrimination ("Charge") filed with the Equal Employment

Opportunity Commission ("EEOC").    (*Id.* at 18 (citing Lundberg dep. 158:11-14, 159:3-7).)

Now on brief, Lundberg relies upon her conversations with Walton and Sheika McCoy

("McCoy") in March and April 2022.  (ECF Doc. 57, at 8.)  Nevertheless, even considering those

conversations to be protected activity for the purposes of the retaliation claim, Defendants are

entitled to judgment as a matter of law and there is no genuine issue of material fact.[1]

Lundberg also argues that there is a genuine issue of material fact as to whether she

qualified for leave under the FMLA.  (ECF Doc. 57, at 9.)  There is no genuine issue because

there is insufficient evidence from which a jury could return a verdict in favor of Lundberg.  Yes,

Defendants dispute that Lundberg's depression and anxiety qualified as a serious health

condition under the FMLA.  That is because there is no evidence in the record to establish that

element of Lundberg's claim.  (ECF Doc. 53, at 20-21.)  Defendants' reliance upon the record to

demonstrate the absence of evidence to support a claim does not give rise to a genuine dispute

when Lundberg does not direct this Court to any evidence in the record that would establish this

element of her claim.

Furthermore, Lundberg's self-serving declaration that she "preferred to continue working

at DRT and, if she had known what her rights and responsibilities were, she would have worked

with her therapist to move forward working for DRT," (ECF Doc. 57, at 9), cannot create an

issue of fact by contradicting her prior deposition testimony that she did not know what she

would have done differently if she received the FMLA Notices.  *See Hannah v. United Parcel*

*Serv., Inc.*, 72 F.4th 630, 638 (4th Cir. 2023) ("[I]t is well established that a party who has been

---

[1] Lundberg's attempt to challenge the credibility of the testimony of Walton and McCoy, (ECF Doc. 57, at 9 n.4), must be ignored.  A party cannot "avoid summary judgment by merely calling into question the credibility of witnesses testifying against them—they must introduce some affirmative evidence that creates a genuine factual dispute."  *McMichael v. James Island Charter Sch.*, 840 F. App'x 723, 731-32 (4th Cir. 2020) (citing *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)).

examined at length on deposition [cannot] raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, because to allow that would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."); *Tillery v. Piedmont Airlines, Inc.*, No. 1:15-cv-01256, 2016 WL 5334673, at *6 (E.D. Va. Sept. 22, 2016), *aff'd* 713 F. App'x 181 (4th Cir. 2017) (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("When determining whether a party's evidence is sufficiently credible to survive summary judgment, the court should consider when in the course of discovery a contention first appears.  A party cannot manufacture a genuine issue of material fact such that 'the only issue of fact is to determine which of the two conflicting versions of [the party's] testimony is correct.'"); *Foster*, 2017 WL 972158, at *1 n.1.

Finally, Lundberg argues that there is a genuine issue of material fact as to whether she was terminated.  (ECF Doc. 57, at 9-10.)  In support, she cites the fact that she was asked to return her uniforms and property via email on October 4, 2022, McCoy's testimony that Lundberg's was employed through October 4, 2022, and Lundberg's receipt of a letter from her 401k plan referring to her as a "former" employee of DRT.[2]  (*Id.*)  Yet in doing so, Lundberg conveniently ignores her own email of May 8, 2023, stating that she believed she was still an employee of DRT and would remain so "until such a time I feel safe to return."  (ECF Doc. 53-28, at 2.)

Moreover, had DRT intended to terminate Lundberg's employment it would have informed OEMS and removed Lundberg's affiliation with the agency, as that is done immediately upon the termination of an employee.  Instead, DRT waited until May 8, 2023, after

---

[2] Lundberg attached this document to her declaration although it was not produced in discovery. Because it was not produced in discovery, it should be stricken from the record.  Fed. R. Civ. P. 37(c)(1).

Lundberg had not worked for nearly a year, to remove her agency affiliation and officially end her employment with DRT. Thus, the evidence—not Lundberg's personal belief—is that her employment with DRT did not end until May 8, 2023, when she was unaffiliated with the agency through OEMS. There is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

## III.     ARGUMENT

### A.     Lundberg was not discriminated against on the basis of sex or sexual orientation.

Lundberg's opposition to summary judgment did not address Defendants' arguments regarding Lundberg's alleged hostile work environment claim. As such, those arguments are deemed to be conceded. *Gowen*, 2022 WL 822172, at *3 (collecting cases). Lundberg now claims only that the employment references were an adverse employment action and that she experienced constructive demotion and constructive discharge. (ECF Doc. 57, at 15-19.) There is no genuine issue of material fact, and these claims fail as a matter of law.

#### 1.     There is no direct evidence of sex discrimination.

The Second Amended Complaint was premised entirely upon the allegation that DRT discriminated and retaliated against Lundberg because she is bisexual. (*See generally* ECF Doc. 14.) In fact, Lundberg alleged that Walton told investigators for the City of Lynchburg and Bedford County that she is bisexual. (*Id.* at ¶¶ 52.) At the time Lundberg filed the Second Amended Complaint she was in possession of redacted copies of the reports, which indicate that Walton stated that she (and her fiancé) was a swinger. (ECF Doc. 53, at SOF ¶¶ 15, 20.) Neither report stated that Lundberg was bisexual and both decision makers with the City of Lynchburg and Bedford County have affirmatively stated that they were unaware of Lundberg's sexual

orientation at the time they made their decisions. (ECF Doc. 53-11, at ¶ 10; ECF Doc. 53-13, at ¶ 9.) Nevertheless, Lundberg based her allegations on this faulty premise.

Now that discovery is complete and the evidence does not support her allegations, Lundberg seeks to change her claim to be that Walton "slut shamed" her, "judged her choice of sexual partners, spread vicious, untrue, rumors of her private sex life, and used her gender non-conformity against her." (ECF Doc. 57, at 3, 12.) This Court should reject Lundberg's efforts to recast her sex discrimination claim into a sex stereotyping claim. *See, e.g. David v. Winchester Medical Center*, No. 5:16-cv-00063, 2018 WL 310140, at *12-13 (W.D. Va. Jan. 5, 2018) (refusing to read a gender stereotyping claim into the gender discrimination claim where none otherwise exists).

Contrary to Lundberg's assertion, there is no direct evidence of sex discrimination. Derogatory comments can constitute direct evidence of discrimination if they are:

1. Related to the protected class of persons for which the plaintiff is a member;

2. Proximate in time to the complained-of adverse employment decision;

3. Made by an individual with authority over the employment decision at issue; and

4. Related to the employment decision at issue.

*Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023). "The kind of statements that suffice to show direct evidence of discrimination are those comments that do not require 'inference or presumption.'" *McLaughlin v. CSX Transp., Inc.*, 211 F. Supp. 3d 770, 779 (citing *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989)). A statement that simply references a protected trait but fails to express any bias against an employee because of that trait does not constitute direct evidence of discrimination. *Croft*, 862 F. Supp. 2d at 494. Here, there was no adverse

employment decision, *see infra* Parts III.A.2, III.A.3, III.A.4, and Walton's comments do not relate to any protected class of which Lundberg belongs.

Walton is alleged to have stated that:

- Lundberg and her fiancé "are open singers and partiers and so forth";

- Lundberg and her fiancé "are definitely some odd ducks";

- Lundberg "struggles with supervision and can cry and become emotional when dealing with employees";

- Lundberg "is very open with a lifestyle of being a swinger";

- Lundberg's "hair may be of different colors";

- Lundberg's "lifestyle could be a distraction and may not fit in with every group of people"; and

- Lundberg's "personal swinger lifestyle . . . appears to not allow the employees she supervises to respect her."

(ECF Doc. 53, at SOF ¶¶ 15, 20.)  Referring to someone as a swinger does not relate to a protected class of persons under Title VII or the Virginia Human Rights Act ("VHRA"). Additionally, where Walton's comment is directed at both a man (Lundberg's fiancé) and a woman (Lundberg), his comment cannot be read as relating to specific a protected class.  The comment that Lundberg and her fiancé are "odd ducks" also cannot be reasonably read to relate to a protected class of individuals.

Describing Lundberg as emotional also does not relate to her sex.  *See Dancico v. MLT Systems LLC*, 2024 WL 5081961, at *5 (E.D. Va. Dec. 11, 2024) (holding that allegations that the plaintiff was disciplined for becoming emotional was not evidence of sex discrimination).  In fact, Walton testified that the phrase was not unique to one gender over another.  (Walton dep. 103:14-25.)  Nor does speaking about Lundberg's choice of hair color relate to a protected class.

The facts of this case are readily distinguishable from that of *Parker v. Reema Consulting Servs.*, 915 F.3d 297 (4th Cir. 2019), upon which Lundberg relies.  (*See* ECF Doc. 57, at 12-14.) In *Parker*, a male subordinate started a rumor that the plaintiff had been promoted because she was having a sexual relationship with a higher-ranking manager.  *Parker*, 915 F.3d at 300.  As the rumor spread through the company, the plaintiff was treated with open resentment and disrespect, was excluded from a meeting while a male coworker was permitted to attend, was chastised for "bringing the situation into the workplace," and was ultimately disciplined and terminated based on the rumor.  *Id.* at 300-01.  The Fourth Circuit concluded that:

> [B]ecause "traditional negative stereotypes regarding the relationship between the advancement of women in the workplace and their sexual behavior stubbornly persist in our society" and "these stereotypes may cause superiors and coworkers to treat women in the workplace differently from men," it is plausibly alleged that [the plaintiff] suffered harassment because she was a woman.

*Id.* at 303 (quoting *Spain v. Gallegos*, 26 F.3d 439, 448 (3d Cir. 1994)).

Here, however, the statement was that Lundberg and her fiancé were swingers.  That comment was not connected to her performance as an employee and Walton even stated that it had not impacted her job in any way.  Nor was there a suggestion that Lundberg was advancing in her career because of her sexual behavior as in *Parker*.  These comments are not direct evidence of sex or sexual orientation discrimination.

2.       **The references do not constitute an adverse employment action.**[3]

Negative letters of recommendation can constitute an adverse employment action "to the extent they have a significant detrimental effect on the plaintiff's employment."  *Wandji v. Wilkie*, No. 2:18-cv-0306, 2020 WL 7647552, at *17 (D.S.C. Nov. 9, 2020), *report &*

---

[3] Lundberg does not address Defendants' arguments regarding the other forms of allegedly disparate treatment outlined in the Second Amended Complaint.  Therefore, those arguments have been conceded and cannot serve as the basis for Lundberg's claim of sex discrimination. *See Gowen*, 2022 WL 822172, at *3.

*recommendation adopted* 2020 WL 7237922 (D.S.C. Dec. 9, 2020), *affirmed sub nom. Wandji v.*

*McDonough*, 850 F. App'x 851 (4th Cir. 2021).  Yet, Lundberg does not present evidence that

Walton's references had a significant detrimental effect on her employment with DRT.  To that

end, Lundberg blurs the line between her discrimination claim and her retaliation claim.

The Supreme Court of the United States has recognized the distinction between the

language used in Title VII's antidiscrimination and antiretaliation provisions.  *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-62 (2006).

> It shall be an unlawful employment practice for an employer—
>
> (1)   To **fail or refuse to hire or discharge** any individual, or otherwise to
> discriminate against any individual **with respect to his compensation,**
> **terms, conditions, or privileges of employment**, because of such
> individual's race, color, religion, sex, or national origin; or
>
> (2)   To limit, segregate, or classify his employees or applicants for
> employment in any way **which would deprive or tend to deprive any**
> **individual of employment opportunities or otherwise adversely affect**
> **his status as an employee**, because of such individual's race, color,
> religion, sex, or national origin.

42 U.S.C. § 2000e-2 (emphasis added).  Compared with:

> It shall be an unlawful employment practice for an employer to **discriminate**
> **against** any of his employees or applicants for employment . . . because he has
> opposed any practice made an unlawful employment practice by this subchapter,
> or because he has made a charge, testified, assisted, or participated in any manner
> in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3 (emphasis added).   The Supreme Court recognized that the

antidiscrimination provision prohibits employment-related discrimination whereas the

antiretaliation provision "extends beyond workplace-related or employment-related retaliatory

acts and harm."  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 63, 67.  Thus, while an action is

materially adverse for a retaliation claim if it might have dissuaded a reasonable worker from

making or supporting a charge of discrimination, *id.* at 68, the Supreme Court recently reiterated

that the antidiscrimination provision of Title VII "requires that the employee show some injury . . . [and] that the injury asserted concern the terms or conditions of her employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 358 (2024). Here, Lundberg fails to make this distinction, and thus has not proven an adverse employment action for purposes of her discrimination claim.

To that end, the cases upon which Lundberg relies to support her claim that the allegedly negative employment reference is an adverse employment action address whether a negative employment reference can be an adverse action for purposes of a **retaliation** claim. Given the difference between an adverse employment action required for a discrimination claim and the materially adverse action required for a retaliation claim, those cases are inapposite.

Further, even considering Lundberg's argument, the uncontradicted evidence from the City of Lynchburg and Bedford County is that the decisions not to hire Lundberg or to rescind the conditional offer of employment were based on factors **other than** Walton's reference. (ECF Doc. 53-11; ECF Doc. 53-13.) As such, the reference did not "have a significant detrimental effect" on Lundberg's employment.

Lundberg merely stating, absent any citation to the record, that "Walton did more than *de minimis* harm to [her] future employment prospects," and that "a reasonable jury could find that Walton's dissemination of rumors that [her] sexual promiscuity negatively impacted, or could impact, her ability to fit in and be respected if hired rose above a *de minimus* harm of future prospects," (ECF Doc. 57, at 15-16), is insufficient to survive summary judgment. *See Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845 (4th Cir. 1988) (plaintiff's conclusory assertions and opinion are insufficient to survive summary judgment).

The references Walton gave to the City of Lynchburg and Bedford County did not alter the terms, conditions, or privileges of Lundberg's employment with those localities or DRT. As such, they are not adverse employment actions for purposes of the Title VII and VHRA sex discrimination claims.

### 3.    **Lundberg was not constructively demoted.**

Lundberg argues that "a reasonable jury could conclude [she] suffered an adverse employment action of constructive demotion" because DRT and Walton's actions were deliberate in failing to act to remedy the situation and her "working conditions became intolerable once she learned of Walton's statements, reported them, and Defendants took no action." (ECF Doc. 57, at 17-18.) Lundberg provides no evidence or authority to support her allegations.

A constructive demotion claim is analyzed under the same framework as constructive discharge. Therefore, Lundberg must show (1) that her working conditions became so intolerable that a person in her position would have felt compelled to resign (or take a lesser position) and (2) she actually resigned (or took a lesser position) because of those conditions. *Perkins v. Int'l Paper Co.,* 936 F.3d 196, 211-12 (4th Cir. 2019). A showing of intolerability requires "something more" than the severe or pervasive conduct that suffices for a hostile work environment claim. *Evans v. Int'l Paper Co.,* 936 F.3d 183, 193 (4th Cir. 2019). Difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to design. *Id.*

This Court has already concluded that, because the references were given outside of Lundberg's presence, they could not support a hostile work environment claim. (ECF Doc. 19, at 12.) Since the intolerability of the working conditions required to support a constructive demotion or discharge claim are even greater than that required for a hostile work environment

14

claim, the references also cannot support a constructive demotion or discharge claim. Lundberg did not address this argument in opposition to summary judgment. As such, it is conceded. *See Gowen*, 2022 WL 822172, at *3.

Instead, Lundberg argues that DRT's failure to take action after the negative references rendered her working conditions so intolerable as to compel her to resign her position as captain. (ECF Doc. 57, at 18.) Yet, there is no evidence in the record regarding changes to Lundberg's working conditions in the less than one month that passed between Lundberg learning about Walton's statements and her resigning the captain position that could meet the high bar of proof for a constructive demotion claim. (Walton dep. 140:5-152:19; ECF Doc. 53-17.)

Moreover, Lundberg does not even address the fact that it was not the allegedly intolerable working conditions that led to her resigning from captain. Her own testimony is that she resigned the position because of "what [she] read in the FOIA documents," a lack of trust in management "to abide by their own SOPs and rules in their own handbook," and her decision to attend paramedic school. (Lundberg dep. 74:11-75:23.) To establish a constructive demotion claim, DRT must have made the conditions so intolerable that a reasonable person would have felt compelled to resign the position **and Lundberg must have actually resigned because of the conditions**. Lundberg cannot rise above her own deposition testimony.

### 4.   <u>Lundberg was not constructively discharged.</u>

Lundberg fails to address Defendants' argument that she did not exhaust her administrative remedies with respect to her constructive discharge claim. (ECF Doc. 53, at 14-15.) Therefore, this argument is deemed to be conceded and the summary judgment should be granted for this reason alone. *See Gowen*, 2022 WL 822172, at *3.

Additionally, Lundberg claims that she was terminated.  There can be no constructive discharge absent a resignation.  *Levesy v. Scholese*, No. 1:22-cv-1234, 2023 WL 5835763, at *12 (E.D. Va. Sept. 7, 2023) (citing *Huizenga v. Am. Int'l Auto Dealer's Ass'n*, No. 1:05-cv-264, 2005 WL 3132451, at *4 (E.D. Va. Nov. 22, 2005)).

The constructive discharge claim also fails for the same reasons that the constructive demotion claim fails.  There is no evidence in the record from which a jury could reasonably conclude that DRT made the working conditions so intolerable that a reasonable person would feel compelled to resign or that Lundberg resigned because of those allegedly intolerable conditions.

On brief, Lundberg argues that "she was largely ignored by Defendants," that unbeknownst to her an email was sent regarding the desire to tell her to "go fly a kite," that there was no acknowledgement of her contracting COVID, and that DRT ultimately asked her to return her uniforms when she was going to be out for an undetermined amount of time.  (ECF Doc. 57, at 18.)  In so doing, she ignores her own testimony that she needed a break from DRT and the Waltons because she was upset about what Walton had said in the references, **not** because of any conditions in the workplace.  (Lundberg dep. 88:3-18.)  Lundberg also overlooks the law of this Circuit that being ignored by co-workers and top management is insufficient to establish constructive discharge, *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 244 (4th Cir. 1997), as is ostracization, *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001).

### 5.  There is no reasonable inference of sex discrimination.

Lundberg argues, absent citation to any authority, that "a reasonable jury could find Walton's statements were made under circumstances that raise a reasonable inference of unlawful discrimination because, among other reasons, Walton's rumormongering did not

happen to anyone else." (ECF Doc. 57, at 15.) There is no evidence to support Lundberg's assertion.

That the alleged "rumormongering" did not happen to anyone else does not provide an inference of sex discrimination. Walton testified that he did not have any other investigations for employees about which there was a rumored sex life. (Walton dep. 90:12-16.) As such, there is no evidence that Lundberg was treated differently than a similarly-situated employee outside of her protected class.

Lundberg's *ipse dixit* argument that because these statements were made about her, they must have been based on her protected class is insufficient to survive summary judgment. *See Holleman v. Colonial Heights Sch. Bd.*, 854 F. Supp. 2d 344, 351-52 (E.D. Va. 2012).

> But the fact that only women, and not men, registered complaints concerning Pond's conduct, does not lead to a rational inference that Pond treated those women in a particular manner *because of* their sex. "A trier of fact may reasonably find discrimination . . . when a female victim is harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." The trier of fact, however, may not reasonably find discrimination when it can only speculate on the *ipse dixit* that complaints by individuals of only one sex mean that the offending conduct complained of must have been motivated by sex.

*Id.* (emphasis and alterations in original) (quoting *Ocheltree v. Scollon Prod., Inc.*, 335 F.3d 325, 331-32 (4th Cir. 2003)).

**B.    DRT did not retaliate against Lundberg under Title VII or the VHRA.**

On brief, and contrary to her deposition testimony, Lundberg argues that she "engaged in protected activity by complaining of sex discrimination to Walton and DRT after she received FOIA responses." (ECF Doc. 57, at 16.) She accuses Defendants of "disput[ing] whether [she] engaged in protected activity," when Defendants have done no such thing. (*Compare id.* at 17 *with* ECF Doc. 53 at 17-19.) Defendants, relying upon Lundberg's sworn deposition testimony,

analyzed the retaliation claim based on the protected activity she identified—the complaint to OEMS and the EEOC. (ECF Doc. 53, at 17-19.) Lundberg was given the opportunity to identify to whom she made complaints that supported her claim for retaliation and did not identify the complaints made to Walton or McCoy upon which she now relies. Lundberg now appears to have abandoned any retaliation claim based upon her reports to OEMS and the EEOC, as she did not address those arguments on brief. Therefore, Defendants' arguments are deemed to be conceded. *See Gowen*, 2022 WL 822172, at *3.

But even assuming that Lundberg is basing her retaliation complaint on the March 10, 2022 reports to Walton and McCoy, she cannot prevail on a retaliation claim. For the reasons stated *supra* in Parts III.A.3 and III.A.4, there is no claim for constructive demotion or constructive discharge. Moreover, to the extent that Lundberg claims she was terminated in October 2022, that is too far removed from her protected activity. *See Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (three to four months is too long to establish causal connection). *But see, Silva v. Bowie State Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006) (ten weeks was sufficiently close to state a *prima facie* case). There is no evidence in the record from which a jury could reasonably conclude that DRT took any action against Lundberg **because of** her protected activity.[4]

## C.    DRT did not interfere with potentially FMLA-qualifying leave.

Despite acknowledging the elements of a FMLA interference claim: (1) employee is entitled to an FMLA benefit; (2) employer interfered with the provision of the benefit; and (3)

---

[4] Lundberg's attempts to question Walton and McCoy's credibility must be ignored. *McMichael*, 840 F. App'x at 731-32. Additionally, Lundberg impermissibly attempts to use a 30-year-old felony conviction to impeach Walton. (ECF Doc. 57 at 19 n.6). This she cannot do. Fed. R. Evid. 609(b). *See U.S. v. Holland*, No. 97-4399, 1998 WL 559723, at *2-3 (4th Cir. Sept. 2, 1998).

the interference caused harm, Lundberg simply does not address Defendants' argument that she does not satisfy the first element and, instead, argues that there is a genuine issue of material fact as to whether she was prejudiced by the fact that she did not receive FMLA notices.  (ECF Doc. 57, at 21-23.)

Lundberg's failure to address Defendants' argument regarding the lack of evidence to demonstrate a serious health condition qualifying Lundberg for FMLA leave is fatal to her claim. Because Lundberg did not address Defendants' arguments, those arguments are deemed to be conceded.  *See Gowen*, 2022 WL 822172, at *3.  Absent evidence that Lundberg was experiencing a serious health condition entitling her to FMLA leave, there can be no FMLA interference.  *See, e.g. Braganza v. Donahoe*, No. 1:13–cv–848, 2014 WL 3749694, at *3 (E.D. Va. July 29, 2014); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001).  *But see Valdivia v. Township High Sch. Dist. 214*, 942 F.3d 395, 398-99 (7th Cir. 2019) (affirming jury verdict finding there was sufficient evidence from which the jury could reasonably conclude that the plaintiff was experiencing a serious health condition).

Moreover, even if Lundberg was entitled to FMLA leave, there is no evidence that the failure to give Lundberg FMLA notices prejudiced her in any manner.  Lundberg unequivocally testified that she did not know what she would have done differently if she had received the FMLA notices.  (Lundberg dep. 98:6-9.)[5]  She also testified that she was still in therapy, suggesting she was still unable to return to work at DRT, (Lundberg dep. 98:10-14), and her Interrogatory Answers stated that she was fit to return to work in November 2023, well after any FMLA protected leave would have expired.  (ECF Doc. 53-19, at No. 18.)  Therefore, there is no

---

[5] As explained *supra*, Lundberg cannot alter her deposition testimony through her declaration in an attempt to create a genuine issue of material fact.  *See Hannah*, 72 F.4th at 638; *Tillery*, 2016 WL 5334673, at *6; *Foster*, 2017 WL 972158, at *1 n.1.

prejudice from the failure to provide FMLA Notices.  *See, e.g., Bellone v. Southwick-Tolland Regional Sch. Dist.*, 915 F. Supp. 2d 187, 195-96 (D. Mass. 2013) (no harm to the plaintiff where he was unable to return to work until well-after FMLA expired); *Roberts v. The Health Ass'n*, No. 04-CV-6637T, 2007 WL 2287875, at *6 (W.D.N.Y. Aug.8, 2007) (no prejudice where employer failed to give FMLA notices when the employee was unable to return to work until after the expiration of the 12-week period of protected leave).

Lundberg's new argument that she was also prejudiced because "having to take on two part time jobs to continue being continuously employed was stressful for [her] during an already hard time," (ECF Doc. 57, at 23), is not supported by the evidence.  Lundberg was hired as a full-time employee for Octapharma Plasma on April 14, 2022, the same day that she submitted her two-week notice that she was going to part-time employment with DRT.  (ECF Doc. 53, at SOF ¶ 22.)  Lundberg was hired as a part-time employee for Amherst County on May 19, 2022. (*Id.*)  Additionally, she worked for Virginia International Raceway on a part-time basis from summer 2022 to summer 2023.  (ECF Doc. 53, at SOF ¶ 32.)  All of these jobs predate any potential request for FMLA leave and, as such, do not demonstrate prejudice from the failure to provide FMLA Notices.

**D.**    **Lundberg cannot establish a claim for tortious interference with a business expectancy.**

Lundberg asks this Court to ignore the declaration of Chief Blankenship.  Why?  Because the Chief unequivocally stated that she rescinded Lundberg's conditional offer of employment because of Lundberg's psychological evaluation and not because of the Background Investigation Report or the information provided by Walton.  (ECF Doc. 53-13, at ¶¶ 7-8.)

Lundberg claims there is a genuine issue of material fact because she takes issue with the way in which her psychological evaluation was conducted. (ECF Doc. 57, at 20.) This she cannot do.[6]

The question is not, as Lundberg postulates, whether Bedford County's "statements are reasonable." (ECF Doc. 57, at 20.) It is the perception of the decision maker that matters. *Croft*, 862 F. Supp. 2d at 597. Chief Blankenship has identified, under oath, the reason for her decision to rescind the offer. Lundberg cannot create a genuine issue of material fact by arguing that she raised issues with her psychological evaluation **after** her conditional offer was rescinded.[7] This is not an issue of intent, as Lundberg argues. (ECF Doc. 57, at 20 (citing *Ferrell v. Harris Ventures, Inc.*, 812 F. Supp. 2d 741, 748 (E.D. Va. 2011)).) There is no evidence to contradict Chief Blankenship's affirmative statement as to why she rescinded the offer.

Lundberg also argues that Walton employed improper methods by making false statements about her, which amounts to misrepresentation or deceit. (ECF Doc. 57, at 21.) There is no evidence, however, that Walton knew his statements were false. As such, there could be no misrepresentation or deceit so as to constitute improper methods. *See, e.g. Stultz v. Virginia, Dep't of Motor Vehicles*, 203 F. Supp. 3d 711, 747 (W.D. Va. 2016) (finding a genuine issue of material fact on a tortious interference claim where there was evidence that the actor knew the statements were false).

---

[6] Lundberg apparently concedes that she cannot establish a tortious interference claim with respect to the City of Lynchburg, as she does not address that claim on brief. As such, it is deemed to be conceded. *See Gowen*, 2022 WL 822172, at *3.

[7] The psychological evaluation took place on February 25, 2022, and the report is dated March 4, 2022. (ECF Doc. 53-13, at 6.) Chief Blankenship rescinded Lundberg's conditional offer on March 7, 2022. (ECF Doc. 53-13, at ¶ 6.) Lundberg emailed Bedford County about issues with the psychological testing on March 10, 2022, nearly two weeks after the testing and after she learned that her conditional offer had been rescinded. (ECF Doc. 57-5.) As such, Lundberg did not report these issues "at the time of the testing" as she asserts on brief. (*See* ECF Doc. 57, at 8 n.3.)

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, as well as those stated in the Brief in Support of Motion for Summary Judgment, Delta Response Team, LLC and Thomas Walton, by counsel, respectfully request that the Court grant their Motion for Summary Judgement and enter judgment in their favor as a matter of law.

**DELTA RESPONSE TEAM, LLC AND THOMAS WALTON**

By Counsel

<u>s/Melissa Y. York</u>
Melissa Y. York (VSB No. 77493)
Counsel for Delta Response Team, LLC and Thomas Walton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
myork@hccw.com

# C E R T I F I C A T E

I hereby certify that on the 16th day of January, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which well send notification of such filing to the following:

Sarah Flynn Robb, Esq.
Sarah Robb Law
919 East Main Street, Suite 1000
Richmond, VA 23227
804-482-1536 - Phone
804-988-5464 - Fax
sarah@sarahrobblaw.com

s/Melissa Y. York
Melissa Y. York (VSB No. 77493)
Counsel for Delta Response Team, LLC and
Thomas Walton
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
myork@hccw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

NATALIE LUNDBERG,

    Plaintiff,

v.                                                    Case No. 3:23-cv-00042

DELTA RESPONSE TEAM, LLC AND
THOMAS WALTON,

    Defendants.

**INDEX OF EXHIBITS
TO DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

| **Exhibit** | **Description** | **Deposition Pg. Nos./ Bates No.** |
|---|---|---|
| 1 | Deposition of Tom Walton | 90, 103, 140-152 |
| 2 | Deposition of Natalie Lundberg | 74-75, 88, 98 |